WILLIMANTIC THREAD Co. and others *v.* CLARK THREAD Co.[1]

*(Circuit Court, D. New Jersey.* June 1, 1886.)

1. PATENTS FOR INVENTIONS—INFRINGEMENTS—DAMAGES—PROFITS—REV. ST. § 4921.

Prior to the act of July 8, 1870, patentees were not authorized to recover in a single suit both profits and damages, but had their election to treat the infringer as a trustee, and by bill in equity recover the profits made by him, or to sue at law for the damages sustained, without reference to the question whether the infringer had gained or lost by his infringement. Section 4921, Rev. St., authorizes courts of equity, in suits for infringement, to award, in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained.

2. SAME—DAMAGES—PROFITS, WHEN MEASURE OF.

"Gains and profits are still the proper measure of damages in equity suits, except in cases where the injury sustained by the infringement is plainly greater than the aggregate of what was made by the respondent, in which event the provision is that the complainant shall be entitled to recover, in addition to the profits to be accounted for by the respondent, the damages he has sustained thereby." *Birdsall* v. *Coolidge,* 93 U. S. 69.

3. SAME—LICENSE FEE—APPORTIONMENT.

Where an established license fee for the use of a patent containing six claims was shown, and the defendant had infringed only two of the six claims, *held,* that it was the duty of the master to ascertain the relative value of the different claims, as nearly as the nature and circumstances of the case allowed, and to charge the defendant, for the use of the claims infringed, such proportion of the whole license fee as the testimony revealed they were relatively worth in their contribution to the efficiency of the machine.

4. SAME—BURDEN OF PROOF.

Where complainant seeks to recover damages on the basis of an established royalty for the use of several claims, only a part of which have been infringed, the burden of proof is upon him to show the relative value of the claims which have been infringed.

5. SAME—RELATIVE VALUE OF CLAIMS.

Where the claims not infringed are merely structural, and comprehended within those infringed, no apportionment of the license fee is proper.

On Exceptions to Master's Report.

*Livingston Gifford* and *Edmund Wetmore,* for exceptions.

*Wm. C. Witter* and *B. F. Thurston,* for complainants.

NIXON, J. An interlocutory decree was entered in this case on May 30, 1879, sustaining the validity of the letters patent No. 26,415, granted to Hezekiah Conant; holding that the defendant, the Clark Thread Company, had infringed the first and third claims, and re-

---

[1] Edited by Charles C. Linthicum, Esq., of the Chicago bar.

ferring the cause to S. D. Oliphant, Esq., as master, to take and report to the court an account of the profits received by the defendant, as well as of the damages sustained by the complainants.    On the twenty-seventh of October, 1884, the master filed his report, stating that 33,837,282 dozens of spools had been wound by the defendant corporation upon machines like the complainants' Exhibits 5 and 6, between December 24, 1869, and July 2, 1879; that the established license or royalty was one-half of one cent. per dozen for each and every dozen spools containing 200 yards each, and in the same proportion for spools containing more than 200 yards; that at the rate of said license the aggregate amount of damages for winding 33,837,282 dozen spools was $169,186.41; that 6 per cent. of said sum, to-wit, $10,151.19, should be deducted for the relative value of the sixth claim of the complainants' patent, which claim was not used by the defendant, leaving due to the complainants for their damages the sum of $159,035.22.    To this report the defendant has filed seven exceptions, and the case is again before me on these exceptions.

From the testimony taken on the accounting it appears, on the admission of the defendant, that 33,837,282 dozen spools of thread, of 200 yards each, have been wound on machines which the court held infringed the first and third claims of the complainants' patent. There was also the sworn denial of the witnesses of defendant that they were aware of any profits to have been realized from the use of the Conant invention, alleging that the profit, saving, gain, or advantage derived from such use was chiefly, if not entirely, due to the inventions made by William Neild and Mr. Clark.    If this statement of the defendant be accepted as true, the further consideration of profits must be dismissed, and the only matter left to be inquired into is the. amount of damages which the complainants have sustained by the use of the Conant invention.

Before the act of July 8, 1870, patentees were not authorized, in a single suit, to recover both profits and damages.    They had their election, either to treat the infringer as their trustee, and to file a bill in equity to recover the profits which the infringer had made by the unlawful use of the patented invention, or to sue at law for the damages which they had sustained, without reference or regard to the question whether the wrong-doer had gained or lost by its use; the measure of damages being not what the defendant had gained, but what the plaintiff had lost.    But under the fifty-fifth section of that act, (section 4921, of Rev. St.,) courts of equity, on a decree for an infringement, may award to the complainant, "in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby."    The rule in such cases is thus stated by the supreme court, in *Birdsall* v. *Coolidge*, 93 U. S. 69:

"Gains and profits are still the proper measure of damage in equity suits, except in cases where the injury sustained by the infringement is plainly greater than the aggregate of what was made by the respondent, in which

event the provision is that the complainant shall be entitled to recover, in addition to the profits to be accounted for by the respondent, the damages he has sustained thereby."

What damages, then, have the complainants shown? On the accounting it was clearly proved that the principal thread manufacturers of the country had taken out licenses under the Conant patent, for the royalty reserved of one-half cent for every dozen spools of 200 yards each. That was the uniform license fee established in all cases. The master has assumed, in the absence of proof of profits, that such license fee is the criterion and true measure of damages to the complainants. The defendant does not seriously controvert the rule, but insists that the license fee gave to the licensees the right to use the whole six claims of the patent; that the defendant in fact only used two, to-wit, the first and third; and that a rebate or reduction should be made for the non-user of the remaining four claims. How much such rebate should be, is the perplexing question.

It was the duty of the master to ascertain the relative value of the different claims, as nearly as the nature and circumstances of the case allowed, and to charge the defendant, for the use of the first and third claims, such proportion of the whole license fee as the testimony revealed they were relatively worth in their contribution to the efficiency of the whole machine. The burden of proof was upon the complainants, who accepted it, and offered evidence before the master designed and tending to show that the first and third claims embraced the vital mechanism of the invention; that the second, fourth, and fifth claims were merely structural, indicating only certain specific forms within which the invention could be worked; and that the sixth claim related to the organization of instrumentalities which enabled the machine to stop in case the thread-winding on the spool became broken, and worked independently of the other claims, and was to be credited with such proportion of the license fee as its contribution to the value of the whole mechanism of the invention was proved to be worth.

The master, in considering the testimony taken on the accounting, adopted the license fee for the whole machine as the fair measure of damages, followed what seemed to be the decision of the supreme court in affirming the court of claims in the case of *McKeever* v. *U. S.*, 14 Ct. Cl. 398, and recognized that he must make reasonable deductions for the relative value of the unused claims. He has reported that the second, fourth, and fifth claims were in fact only structural, and were comprehended within the mode of operation of the first claim, and that they should be regarded only as indications of particular methods for carrying out the invention; and that, on the other hand, the sixth claim, which acted independently of the first, should be credited with 6 per cent. of the whole amount that would have been due and receivable if license fees had been regularly paid at the rate of one-half of one cent per dozen for every dozen spools containing 200 yards each.

Without taking up the consideration of the exceptions *seriatim*, it is only necessary to observe that I have examined the evidence in the accounting record with care; that the wide discrepancy of views of the learned counsel arises from the different theories insisted upon by them on which the master should have proceeded; and that, so far as I find any rule for estimating the damages in such a case, I think the master has followed the one suggested or approved of by the supreme court in the above-quoted case.

The result therefore is that the exceptions to the report must be overruled; and it is so ordered.